UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHANNON LEE DERTZ,

                 Plaintiff,

v.                                                        Case No. 24-cv-880-pp

STEVEN ARTS, *et al.*,

                 Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING AMENDED COMPLAINT (DKT. NO. 7) UNDER 28 U.S.C. §1915A**

---

      Plaintiff Shannon Lee Dertz, who is incarcerated at the Drug Abuse Correctional Center (DACC) and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law. On September 19, 2024, the court received the plaintiff's amended complaint, in which he adds one defendant and removes other defendants and claims. Dkt. No. 7. Because the court had not yet screened the plaintiff's original complaint when the court received his amended complaint, this decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his amended complaint, dkt. no. 7.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed the original complaint. See 28 U.S.C.

§1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On July 16, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $9.88. Dkt. No. 5. The court received that fee on August 9, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Amended Complaint (Dkt. No. 7)**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State

Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The amended complaint involves events that allegedly occurred while the plaintiff was incarcerated at Sanger Powers Correctional Center. Dkt. No. 7 at ¶3. It names as defendants Sergeant Steven Arts, Captain Pete Stiefvater, Captain Terrence Jaeger from Winnebago Correctional Center, Superintendent

Stephanie Cummings and Warden Clinton. Id. at ¶¶4–7. The plaintiff has sued the defendants in their individual capacities. Id.

The plaintiff alleges that on August 12, 2023, he graduated with a degree in industrial maintenance. Id. at ¶9. Superintendent Cummings spoke at the graduation ceremony and promised the graduates that they would receive a position in their field if they placed at the top of their class, which the plaintiff did. Id. The plaintiff alleges that Warden Bryant reiterated those remarks about work placement. Id. He says Captain Stiefvater told the plaintiff's class that they all would have immediate employment with Winona Foods, but he later retracted that statement. Id. at ¶10.

The plaintiff alleges that on August 16th, 2023, he interviewed with a construction company, A.K. Crust, that previously had hired from Sanger Powers. Id. at ¶11. He says that on September 7th, 2023, his resume and those of eight of his classmates "were sent to Winona Foods knowing, they were not hiring at that time or in the near future." Id. at ¶12. About a week later, the plaintiff asked Sergeant Arts about his application with A.K. Crust. Id. at ¶13. He alleges that Arts refused to send him to A.K. Crust and told him that the company sent Arts an e-mail "stating [the plaintiff] had a bad attitude." Id. The plaintiff alleges that on September 19, 2023, his resume "was sent to Winona Foods again," even though they still were not hiring. Id. at ¶14. He claims that this is "a tactic that they use, So they can say they sent an inmate's resume out." Id.

The plaintiff alleges that he emailed Arts on September 20 and 28, 2023, to talk about his A.K. Crust application and the email they sent to Arts. Id. at ¶¶15–16. He says Arts refused to give him details, and Cummings "covered for Arts" by saying it "would take months to get that email." Id. at ¶16. The plaintiff emailed Cummings and Stiefvater again, but they told him, "Work release is a privilege not a right." Id. at ¶18. In October 2023, the plaintiff emailed Stiefvater about an opening with Aarrowcast, but Stiefvater did not respond. Id. at ¶19. He later asked Stiefvater in person about this position, but Stiefvater falsely claimed that Aarrowcast was not hiring, then gave applications to other people. Id. at ¶20. The plaintiff also applied for a position with Builders First Source, but Arts told the plaintiff that Builders "didn't want [the plaintiff] for the position." Id. at ¶21.

The plaintiff alleges that on October 16, 2023, he was hired by Builders, but that he and two others were laid off after six days "by no fault of [their] own," even after a manager told the plaintiff he was doing a good job. Id. at ¶22. Arts told the workers they would return to work within two weeks. Id. On November 4, 2023, the plaintiff sent Warden Bryant a letter "about the evil and malicious acts by Arts, Cummings and Steifvater," but Bryant did not respond. Id. at ¶23. On November 22, 2023, the plaintiff remained laid off; he emailed Cummings and Stiefvater about it, but they did not respond. Id. at ¶24. The plaintiff emailed them again a month later, and Cummings and Stiefvater falsely told him that he would return to work based on his release date. Id. at ¶25. The plaintiff alleges that the DACC contacted Sanger Powers in August 2023 with "a tentative

bed date" for the plaintiff of July 22, 2024. Id. at ¶26. He claims this "is also a stall tactic to deprive [him] of employment" in violation of Wisconsin Division of Adult Institutions policy. Id.

In mid-December 2023, Arts sent resumes—but not the plaintiff's—for other maintenance positions. Id. at ¶27. The plaintiff says he was "more qualified than most of the applications that were sent." Id. The plaintiff asked Arts why he did not send the plaintiff's resume, and Arts allegedly responded, "They don't want you" in a loud and rude tone "and also state[d] other rude comments." Id. at ¶28 (capitalization omitted). The plaintiff says this was false, and he says Arts then falsely told Builders that the plaintiff was injured. Id. The plaintiff says he contacted Stiefvater and Cummings about Arts's comments and the situation with Builders, and they "conspired with Arts" to lie about the plaintiff being injured so he could not return to work. Id. at ¶29. He also claims this was "all a retaliation tactic" in response to letters the plaintiff sent to the warden claiming that Stiefvater and Cummings gave "false hopes and did 'EVIL' to most of the Industrial Maintenance class." Id. at ¶30.

The plaintiff says he filed a grievance about this issue, but it was returned to him. Id. at ¶31. He refiled the complaint, and the complaint examiner sent the response to him instead of "going through [Sanger Powers] Administration." Id. The plaintiff nonetheless says it was "obvious" that his mail "had been opened and resealed." Id. He alleges that Stiefvater refused to accept his complaints, so he sent his appeal directly to the complaint examiner's office. Id. at ¶32. He says Sanger Powers officials "decided to bring

6

Case 2:24-cv-00880-PP    Filed 10/09/24    Page 6 of 15    Document 9

in Jaeger" from Winnebago "to deliberately and intentionally dismiss" the plaintiff's complaints. Id. He asserts that Sanger Powers then sent his resume to Aarrowcast "as a preemptive measure so that they could dismiss [his] complaint." Id. The plaintiff alleges that his resume was sent to other businesses where he would be "a good fit," but that none responded or hired him. Id. at ¶34.

In February 2024, Arts told the plaintiff that he had to "get an institution job before [he would] get an application" for work outside of the institution. Id. at ¶37. The plaintiff alleges that Arts "was trying to force [him] to work back in the kitchen," which would be a conflict of interest (though the plaintiff does not say why). Id. at ¶38. The plaintiff says that other incarcerated persons with an earlier DACC bed date or release date, without having had an institution job and with conduct reports, had gotten jobs but he still was waiting to be hired. Id. at ¶¶40–49. He claims that Stiefvater "is still terrorizing [him]" by having staff at DACC file false conduct reports against him. Id. at ¶50. The plaintiff claims that Stiefvater, Cummings and Arts "caused [him] to lose [his] employment" and "deprived [him] the opportunity to go to work for any other company." Id. at ¶¶52, 54. He says that Stiefvater and Cummings retaliated "against [him] without the need or cause." Id. at ¶53. He claims that Stiefvater also improperly refused to accept his institutional complaints, and that Jaeger "deliberately and intentionally dismissed" his complaints. Id. at ¶55.

The plaintiff asks the court to fire Sergeant Arts from his position, demote Captain Stiefvater, remove Superintendent Cummings from her

position and force Warden Bryant to resign. Id. at ¶¶56–59. He also seeks $2 million in compensatory and punitive damages and seeks to proceed on "state-law claims of negligence against all defendants". Id. at ¶¶60–61.

C. Analysis

The plaintiff's primary claim is that the defendants' actions cost him his prison job and made it difficult for him to obtain new work, all without due process of law. But the plaintiff has no Fourteenth Amendment property or liberty interest in his prison job. Rhodes v. Chapman, 452 U.S. 337, 348 (1981); Olson v. Humphreys, Case No. 07-C-682, 2007 WL 2570231, at *4 (E.D. Wis. Aug. 30, 2007) (citing Harris v. Fleming, 839 F.2d 1232, 1237 n.5 (7th Cir. 1988); and Garza v. Miller, 688 F.2d 480, 485-86 (7th Cir. 1982)). Nor does the plaintiff have a property or liberty interest in participating in a work release program, so he cannot state a due process claim about the denial of work release. See DeTomaso v. McGinnis, 970 F.2d 211, 213 (7th Cir. 1992); Grisle v. Jess, Case No. 17-cv-858, 2017 WL 3274214, at *3 (E.D. Wis. Aug. 1, 2017) ("[T]he plaintiff had no liberty or property interest in participating in the work release program. No liberty or property interest in the work release program means that the plaintiff had no right to the process (i.e., the hearing) determining whether he should be permitted to participate in the program."). Because the plaintiff had no right to employment while incarcerated, his allegations that the defendants lied about his work status or kept him from obtaining new work does not state a claim for a violation of his civil rights.

8
Case 2:24-cv-00880-PP    Filed 10/09/24    Page 8 of 15    Document 9

The plaintiff claims that staff have denied his institutional complaints or refused to process them, but he also says he exhausted his administrative remedies by filing complaints and appeals of denied complaints. Either way, the plaintiff has no inherent constitutional right to a prison grievance system. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). That means the amended complaint does not state a claim regarding the alleged mishandling or denial of the plaintiff's institutional complaints and appeals.

The plaintiff alleges that Sergeant Arts verbally harassed him or used abusive language towards him. But except in exceptional circumstances, verbal harassment and unprofessional comments from prison officials do not violate the Eight Amendment. See Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Beal v. Foster, 803 F.3d 356, 357–58 (7th Cir. 2015)) (explaining that prison staff's use of even "[r]epugnant words . . . will seldom rise to an Eighth Amendment violation" because "[r]elationships between prisoners and prison staff are not always marked by genteel language and good manners"). The plaintiff alleges that Arts told him "in a rude tone" that Builders did not want him to work there and made "other rude comments" (which the plaintiff does not recount). This is not the kind of exceptional or extreme circumstance that

9

amounts to a constitutional violation. The plaintiff's complaint about Arts's verbal harassment does not state a claim.

The plaintiff next alleges that Stiefvater and Cummings retaliated against him for emailing them about Arts's verbal abuse and for sending letters to the warden about them giving workers "false hopes" by lying about him being injured and unable to return to work at Builders. The court analyzes these allegations under the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity" and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783).

The court cannot determine from the plaintiff's single allegation whether he states a claim of retaliation. The plaintiff's letters to the warden arguably constitute protected activity because they complained about conditions at the prison affecting his ability to seek a prison job. See Daugherty, 906 F.3d at 610. He alleges that his letter motivated Stiefvater and Cummings to lie about him being injured, which satisfies the third factor above. But it is not clear whether the defendants lying to Builders about the plaintiff's work status likely prevented his "future protected activity." The court must analyze this factor using "an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020)

(quotation omitted). Because the standard is objective, "a specific plaintiff's persistence does not undermine his claim." Id. (citing Holleman v. Zatecky, 951 F.3d 873, 880 (7th Cir. 2020)). It seems more likely that an incarcerated person who was denied work privileges would continue seeking work and would file complaints about staff's attempts to hinder his efforts, like the plaintiff says he did. Although it is possible the plaintiff could state a claim of retaliation with more information, the court finds that the amended complaint as alleged does not state a claim of retaliation against Stiefvater and Cummings.

The court finds that the amended complaint does not state a claim, for the reasons explained above. But it is possible that with more information, the plaintiff may be able to state a claim of retaliation against Stiefvater and Cummings. The court will provide the plaintiff ***a final opportunity*** to amend his complaint to correct the deficiencies noted and better explain that claim. He may not include his allegations about his prison job, Sergeant Arts's verbal harassment or the denial of his institutional complaints because the court has determined that those allegations would not state a claim, even with more information.

When writing his second amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's second amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does

need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must write "Second" above the words Amended Complaint at the top of the first page. He must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the second amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The second amended complaint takes the place of the prior complaints and must be complete by itself. The plaintiff may not refer the court back to his original or amended complaint. He instead must repeat in the second amended complaint any facts from the amended complaint that he believes are necessary to his claims. If the second amended complaint does not comply with the instructions in this order, the court will dismiss the second amended complaint and will not provide the plaintiff another opportunity to amend his complaint.

The plaintiff's amended complaint asks the court to order Sanger Powers to demote, fire or transfer the Sanger Powers defendants. The court has no authority over hiring or firing decisions of institutions and cannot order Sanger Powers to demote, fire or transfer its employees. Under the PLRA, the plaintiff may seek *limited* injunctive relief, <u>see</u> 18 U.S.C. §3626(a), or monetary

damages. The court advises the plaintiff that if he decides to file a second amended complaint, he should carefully read this order, limit his second amended complaint to the claim described above and seek only permissible relief.

Finally, because the amended complaint does not state a federal claim, the court will not exercise supplemental jurisdiction over any putative claims arising under state law. The court will dismiss any state law claims without prejudice under 28 U.S.C. §1367(c)(3).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's amended complaint fails to state a claim. Dkt. No. 7.

The court **ORDERS** that the plaintiff may file a second amended complaint that complies with the instructions in this order. If the plaintiff chooses to file a second amended complaint, he must do so in time for the court to *receive* it by the end of the day on **November 15, 2024**. If the plaintiff files a second amended complaint by the above deadline, the court will screen the second amended complaint as required by 28 U.S.C. §1915A. If the court does not receive a second amended complaint by the deadline, or if the second amended complaint does not comply with the instructions in this order, the court will dismiss this case based on the plaintiff's failure to state a claim in

his amended complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$340.12** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Superintendent of the Drug Abuse Correctional Center where the plaintiff is incarcerated.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>  Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include with this order a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 9th day of October, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**