UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHANNON LEE DERTZ,

                            Plaintiff,

        v.                                          Case No. 24-cv-880-pp

STEVEN ARTS, *et al.*,

                            Defendants.

**ORDER SCREENING SECOND AMENDED COMPLAINT (DKT. NO. 10)
UNDER 28 U.S.C. §1915A**

On October 9, 2024, the court entered an order screening plaintiff

Shannon Lee Dertz's *pro se* amended complaint under 42 U.S.C. §1983. Dkt.

No. 9. The court determined that the amended complaint did not state a claim

for relief, but it gave the plaintiff a final opportunity to amend his complaint

and better explain his claim that some of the defendants retaliated against him.

Id. at 11. The court did not allow the plaintiff to file a second amended

complaint about any other allegations. Id. The court ordered the plaintiff to file

his second amended complaint by November 15, 2024. Id. at 13. On October

28, 2024, the court received the plaintiff's second amended complaint. Dkt. No.

10. This decision screens that complaint.

**I.      Screening the Second Amended Complaint**

        A.      <u>Federal Screening Standard</u>

        Under the PLRA, the court must screen complaints brought by

incarcerated persons seeking relief from a governmental entity or officer or

employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the second amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the second amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The second amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d

2

824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The second amended complaint, like the previous complaint, involves events that allegedly occurred while the plaintiff was incarcerated at Sanger Powers Correctional Center. Dkt. No. 10 at 2. It again names as defendants Sergeant Steven Arts, Captain Pete Stiefvater and Superintendent Stephanie Cummings. Id. at 1. The plaintiff sues the defendants in their individual capacities only. Dkt. No. 10-1 at 3.

The plaintiff alleges that in November 2023, Stiefvater, Arts and Cummings (who comprise "the work committee") terminated "his high paying Community job . . . with no explaination [sic]." Dkt. No. 10 at 2. He says the defendants "conspired and then retaliated against him by telling [his employer] he was injured," then terminating his position and denying him "any other future employment in the community." Id. He says that the defendants relayed the false message of his injury because they "caught wind" that the plaintiff sent letters to the Warden and "the media" about misdeeds at Sanger Powers, including "false hopes, false statements . . . [and] evil and unprofessional acts against [the plaintiff] and others." Id. at 2–3. He also says that from September 2023 through February 2024, he "filed multiple grievances on Arts, Stiefvater

3

and Cummings about the evil and malicious acts they have done or caused."
Id. at 3.

The plaintiff seeks monetary damages and injunctive relief ordering the defendants "to stop the stalking, retaliation and the conspiring" between Sanger Powers and the Drug Abuse Correction Center (DACC), where plaintiff is now incarcerated. Id. at 4; Dkt. No. 10-1 at 1. He also seeks to proceed on "state-law claims of negligence," but provides no further elaboration. Dkt. No. 10 at 4. In a filing attached to his complaint, the plaintiff lists several defendants at DACC who were involved in the alleged retaliation and/or conspiracy. Dkt. No. 10-1 at 2.

C.    Analysis

As the court explained in the previous order, the plaintiff cannot proceed on a claim related to the loss of his prison job because he has no federal right to that job. Dkt. No. 9 at 8–9. But even though he had no right to his job, he may be able to state a claim that the defendants retaliated against him for speaking out about his treatment at Sanger Powers by taking his prison job. See DeWalt v. Carter, 224 F.3d 607, 618–19 (7th Cir. 2000), abrogated in part on different grounds by Savory v. Cannon, 947 F.3d 409, 423–24 (7th Cir. 2020) (en banc)).

The court previously explained that it analyzes the plaintiff's allegations of retaliation under the First Amendment. Dkt. No. 9 at 10 (citing Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a

4

deprivation likely to prevent future protected activity," and "his protected activity was a motivating factor in the defendants' decision to retaliate." <u>Daugherty v. Page</u>, 906 F.3d 606, 610 (7th Cir. 2018) (citing <u>Perez</u>, 792 F.3d at 783).

The court again finds that the plaintiff's letters to the warden and "the media" "arguably constitute protected activity because they complained about conditions at the prison affecting his ability to seek a prison job." Dkt. No. 9 at 10 (citing <u>Daugherty</u>, 906 F.3d at 610). The plaintiff newly alleges that he also filed grievances against the defendants before they terminated his prison job. The filing of previous complaints or grievances generally is protected activity. <u>See</u> <u>Daugherty</u>, 906 F.3d at 610. The plaintiff reiterates that his letters and previous grievances are what motivated Stiefvater and Cummings to lie about him being injured, which satisfies the third factor.

As explained in the previous order, the court must analyze the final factor—whether the defendants lying about his work status likely prevented the plaintiff's "future protected activity"—using "an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." <u>Douglas v. Reeves</u>, 964 F.3d 643, 646 (7th Cir. 2020) (quotation omitted). Because the standard is objective, "a specific plaintiff's persistence does not undermine his claim." <u>Id.</u> (citing <u>Holleman v. Zatecky</u>, 951 F.3d 873, 880 (7th Cir. 2020)).

The court previously observed, "It seems more likely that an incarcerated person who was denied work privileges would continue seeking work and would file complaints about staff's attempts to hinder his efforts, like the

plaintiff says he did." Dkt. No. 9 at 11. But the plaintiff newly alleges that in addition to the letters, he filed grievances against the defendants that led to them terminating his prison job. The court finds that an ordinary incarcerated person punished for filing grievances by having his prison job terminated likely would decline to file future grievances. The plaintiff's allegations satisfy this final factor, and the court will allow him to proceed on a First Amendment claim of retaliation.

The plaintiff also alleges that the defendants conspired to terminate his prison job. Conspiracy is not an independent basis of liability under §1983. Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008) (citing Cefalu v. Village of Elk Grove, 211 F.3d 416, 423 (7th Cir. 2000)). To proceed on his conspiracy claim, the plaintiff must show that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." Beaman v. Freesmeyer, 776 F.3d 500, 510 (7th Cir. 2015). Put differently, the plaintiff must "show an underlying constitutional violation" and "demonstrate that the defendants agreed to inflict the constitutional harm." Hurt v. Wise, 880 F.3d 831, 842 (7th Cir. 2018).

The plaintiff alleges that the defendants jointly lied to the plaintiff's employer to have him terminated from his prison job in retaliation for filing past complaints, grievances and letters. The plaintiff does not specifically allege that the defendants "reached an agreement" to retaliate against him, nor does he specify what "overt acts" they took in furtherance of that retaliation. But the court can infer from the second amended complaint that there was such an

agreement, and that the "overt acts" included the lies to the plaintiff's employer. Although the allegations are slim, the court finds that the plaintiff has alleged enough to proceed on a claim of a conspiracy under §1983.

The plaintiff also seeks to proceed on a state law claim of negligence. But he alleges no facts supporting a potential negligence claim. If what he says is true, and the defendants lied about his injury to have him fired, then their actions were intentional, not negligent. If the plaintiff had alleged that the defendants acted negligently and caused him to lose his prison job, those allegations would not support a claim of retaliation. See Hunter v. Welborn, 52 F. App'x 277, 280 (7th Cir. 2002) (affirming dismissal of retaliation claim because incarcerated person conceded that defendant's "actions were merely 'negligent,' and that is insufficient to support . . . [a] retaliation claim under § 1983"). The plaintiff has not described how or why he believes the defendants acted negligently in addition to intentionally causing the loss of his prison job. He has not stated a state law claim of negligence.

The plaintiff names several defendants at DACC who he says also participated in the alleged conspiracy or retaliation. But the second amended complaint contains no allegations against these persons. The plaintiff merely lists their names in an attachment to his second amended complaint. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." See Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting Vance v. Peters, 97 F.3d

987, 991 (7th Cir. 1996)). The plaintiff's list of names, without any allegations tying those persons to the alleged violations, is insufficient to state a claim against any DACC defendant.

As a final note, the second amended complaint seeks injunctive relief in the form of a court order telling the defendants "to stop the stalking, retaliation and the conspiring." But the plaintiff has sued the defendants in their individual capacities only. "[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." See Greenawalt v. Ind. Dep't of Corr., 397 F.3d 587, 589 (7th Cir. 2005) (citing Luder v. Endicott, 253 F.3d 1020, 1024–25 (7th Cir. 2001)). The plaintiff may proceed only on his request for damages.

In summary, the plaintiff may proceed against defendants Arts, Stiefvater and Cummings on claims of retaliation and conspiracy for monetary damages only. He may not proceed on any other claim or against any other defendant, and he may not seek any other relief.

## II. Conclusion

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the second amended complaint and this order to the Wisconsin Department of Justice for service on defendants Steven Arts, Pete Stiefvater and Stephanie Cummings. Under the informal service agreement, the court **ORDERS** those defendants to respond to the second amended complaint within sixty days.

8

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin this 26th day of December, 2024.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**